**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF
AMERICA,

        Plaintiff,

vs.                                             No. CR 20-0713 JB

ADRIAN NIETO,

        Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendant Nieto's Objections to Presentence Report and Sentencing Memorandum, filed June 30, 2020 (Doc. 33)("Objections"). The primary issues are: (i) whether the presentence incarceration date begins on January 29, 2020, when Defendant Adrian Nieto was arrested and charged in state court, or whether the presentence incarceration date begins on February 14, 2020, when Nieto was brought into federal custody on a writ of habeas corpus and prosequendum; (ii) whether Nieto's confinement, as described in the Presentence Investigation Report ¶ 26, at 5-6, filed June 5, 2020 (Doc. 30)("PSR"), during the time that he was in the custody of the New Mexico Children, Youth and Families Department ("CYFD") is imprisonment and thus his criminal history should be assessed accordingly; (iii) whether Nieto's confinement, as described in the PSR's ¶ 27, at 6-7, during the time that he was in the custody of the New Mexico Children, Youth and Families Department is imprisonment and thus his criminal history should be assessed accordingly; (iv) whether the criminal history score calculation of 6 points is correct, because Nieto's earlier Objections to the PSR's ¶ 26, at 5-6, and PSR's ¶ 27, at 6-7, indicate that the score should be lower; (v) whether the information in the PSR's ¶ 54, at 18, about a state court case for which Nieto was arrested should be included, because Nieto states that

his GPS monitoring bracelet shows that he was not at the victim's residence at the time of the crime.  The Court concludes: (i) the Bureau of Prisons ("BOP"), and not the Court, must calculate the presentence incarceration credit, but the Court will make certain that the PSR's information is accurate so that the BOP can accurately calculate Nieto's presentence credits; (ii) Nieto's confinement, as described in the PSR's ¶ 26, at 5-6, is imprisonment and thus he will receive 2 criminal history points; (iii) Nieto's confinement, as described in the PSR's ¶ 27, at 6-7, merits only 1 criminal history point, because of the amended Judgement and Disposition; (iv) the criminal history score calculation is 5 points; and (v) the Court will decide at sentencing whether information about a state court case for which Nieto was arrested should be included in the the PSR's ¶ 54, at 18.

## FACTUAL BACKGROUND

On January 29, 2020, a law enforcement officer from the Albuquerque Police Department ("APD") on patrol identified an individual sitting in a vehicle's passenger seat as Adrian Nieto, whom the officer knew had active felony warrants and a history of possessing firearms.  PSR ¶ 6, at 3.  The law enforcement officer began to follow Nieto without activating his emergency equipment; Nieto subsequently made several turns that indicated to the law enforcement officer that Nieto was trying to evade the law enforcement officer.  See PSR ¶ 6, at 3.  The driver of Nieto's vehicle eventually stopped the car in an elementary school parking lot, and the law enforcement officer parked his car behind Nieto's vehicle and activated his emergency equipment.  See PSR ¶¶ 6-7, at 3.  When Nieto then exited the car, the law enforcement officer identified himself and called Nieto by his name, after which Nieto ran into the elementary school's main building.  See PSR ¶ 7, at 3.  Nieto continued his flight through the building into a courtyard area, then through the playground, and finally towards the school's portable classrooms.  See PSR ¶ 7,

at 3.  The law enforcement officer "caught up to Nieto near a chain-link fence and directed him to get on the ground."  PSR ¶ 7, at 3.

Nieto did not get on the ground and instead turned around, and the officer then noticed a bulge in Nieto's waistband that looked like a firearm.  See PSR ¶ 7, at 3.  The law enforcement officer deployed a taser that struck Nieto, who fell to the ground.  See PSR ¶ 7, at 3.  As the law enforcement officer moved to put Nieto in custody, Nieto advised the officer to be cautious because Nieto had a loaded handgun in his waistband.  PSR ¶ 7, at 3.  The law enforcement officer removed the gun, which was a Glock 19, 9 mm pistol that was fully loaded with sixteen rounds.  PSR ¶ 8, at 4.  In a post-arrest statement, Nieto stated that he fled, because he knew he had active warrants and that he took the handgun from the vehicle's glove compartment with him so the occupants of the vehicle would not "get into trouble."  PSR ¶ 9, at 4.

## PROCEDURAL BACKGROUND

The Indictment charges Nieto for "unlawfully, knowingly and intentionally possess[ing] a firearm that had moved in and otherwise affected interstate and foreign commerce, at a place that the defendant knew and had reasonable cause to believe was a school zone" in violation of 18 U.S.C. § 922 (q)(2)(A).  Indictment at 1, filed February 26, 2020 (Doc. 16)(citing 18 U.S.C. § 922(q)(2)(A).  On May 5, 2020, Nieto pled guilty to the indictment.  See Clerk's Minutes at 1, filed May 11, 2020 (Doc. 28).  The United States Probation Office ("USPO") filed a Presentence Investigations Report.  See PSR at 1.  The PSR's ¶ 15 states:

> The defendant was initially charged with Assault With Intent to Commit a Violent Felony on a Peace Officer and Aggravated Assault Upon a Peace Officer With Intent to Commit a Felony in New Mexico First Judicial District Court Case No.: D-101-CR-2019-00617, and the defendant possessed the firearm in connection with these offense.  The state charges were dismissed as a result of the defendant being prosecuted for the current federal charge.

PSR ¶ 15, at 5.   Paragraph 16 states: "Base Offense Level: The guideline for a violation of 18 U.S.C. § 922 (q)(2)(A) is USSG § 2K2.5.   The base offense level is 6."   PSR ¶ 16, at 5.   The Court will sentence Nieto on August 31, 2020.   See Notice of Hearing, filed August 20, 2010 (Doc. 38)(text-only entry).

### 1.   **The Objections.**

Nieto objects to the USPO's PSR.   See Objections at 1.   He first objects to the PSR's statement that Nieto will have 180 days in custody by the sentencing date, because he argues that "the correct date for determining presentence incarceration credit is the date of the incident and Mr. Nieto will have been in custody 196 days at the time of sentencing for the offense of conviction."   Objections at 2.   Nieto next objects to the PSR's ¶ 26, at 5-6, which states that the state court sentenced him to a term of imprisonment on April 19, 2017 in case no. D-202-YR-2016-30.   See Objection at 2 (citing PSR ¶ 26, at 5-6).   He argues that the Judgment and Disposition shows that the state court treated Nieto as a delinquent child and, instead of committing Nieto to the Bernalillo County Juvenile Detention Center, the state court opted to transfer legal custody of Nieto to the CYFD.   Objections at 2.   Thus, Nieto argues, he was not ordered to a term of imprisonment, and "[a]accordingly, pursuant to [United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines")] §4A1.2(d)(2)(B), only 1 criminal history point shall be assessed." Objections at 2.

Nieto further objects to the characterization of the outcome of case no. D-202-JR-2019-107, in the Second Judicial District, because that case's Judgment and Disposition indicate that the court treated him as "a delinquent child and transferred legal custody of Mr. Nieto as a juvenile to the" CYFD, instead of sending to the Bernalillo County Juvenile Detention Center.   Objections at 3.  Further, Nieto argues, after Nieto filed a motion to modify the disposition, the court changed

- 4 -

the disposition to a term of probation.  See Objections at 3.  Thus, Nieto argues, "there is no evidence that Mr. Nieto was ever ordered to a term of imprisonment in case no. D-202-JR-2019-107," and "[a]ccordingly, pursuant to U.S.S.G. Section 4A1.2(d)(2)(B), only 1 criminal history point should be assessed."  Objections at 3-4.  Nieto subsequently objects to a total criminal history score of 6 points, because, with his previous objections considered, "the total score should be modified to reflect four criminal history points."  Objections at 4.

Nieto then objects to the arrest detailed in the PSR's ¶ 54, at 18, being included, because he states that the victim mistakenly identified him.  See Objections at 4.   Nieto asserts that, "if properly investigated," his GPS monitoring bracelet's location data would show that he was not at the victim's house on the day of the crime.  Objections at 4.  Moreover, Nieto says, he was recovering that day from a gunshot-caused fracture in his humerus bone.  See Objections at 5.  He further notes that the "charges were dismissed for further investigation on February 10, 2020, and have not been subsequently charged through indictment or information."  Objections at 5.  Nieto acknowledges that he has "no objections to the information provided as offense conduct and accepts full responsibility for his actions," and he confirms the PSR's Offender Characteristics information.  Objections at 5.

Nieto then begins his argument section with an overview of his stance, arguing that any sentence beyond time served "is far more severe than necessary to achieve the sentencing aims established by Congress."  Objections at 6 (citing 18 U.S.C. § 3553(a)(2)).  He further argues that he has a history of childhood mental health disorders, including post-traumatic stress disorder, depression, and attention deficit/hyperactivity disorder, and that incarceration will further traumatize him without protecting the public.  See Objections at 6.  Further, Nieto argues, his crime has no victims.  See Objections at 6.  Nieto requests that the Court fashion a sentence for Nieto

"focusing on rehabilitation to complete his high school diploma and continued educational training along with mental health treatment and guidance which he so desperately needs."  Objections at 6 (citing 18 U.S.C. § 3553 (a)(2)(C) and (D)).

Nieto then details his reasoning for why a sentence of rehabilitation is a more "just resolution" than "a lengthy incarceration sentence providing deterrence." Objections at 7.  He explains that this incarceration period is his first incarceration period in an adult detention facility, as he committed the instant offense when he was eighteen years old.  See Objections at 7.  He argues that the mind of an eighteen-year-old man works differently than the mind of a more developed adult, and it is characterized by a manifestation of "irresponsible, impulsive, and reckless behaviors."  Objections at 7 (citing United States Sentencing Commission, Youthful Offenders in the Federal System at 5 (May 25, 2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications-researchpublications /2017/20170525).  He lists Supreme Court of the United States cases in which "the Supreme Court has repeatedly recognized that an offender's age and neurological development is constitutionally relevant to the Eighth Amendment."  Objections at 8 (citing Miller v. Alabama, 567 U.S. 460 (2012); Graham v. Florida, 560 U.S.48 (2010); Roper v. Simmons, 543 U.S. 551 (2005)).  He notes that, in all of these cases, the Supreme Court concluded that the development of a juvenile's brain makes him or her more susceptible to reform than an adult.  See Objections at 8.  He further argues that the scientific community has, in the past ten years, come to a "growing consensus" that the human brain continues its development until age twenty-five.  See Objections at 9.  "In other words, neuroscience shows that the factors that render juveniles less culpable and more capable of reform extend into young adulthood."  Objections at 9 (citing Reducing Recidivism & Improving Other Outcomes for Young Adults in the Juvenile & Adult Criminal Justice Systems at 2, Council

of State Gov'ts Just. Ctr. (Nov. 2015)).  He argues that young adults from ages eighteen to twenty-four are more similar to juveniles than fully mature adults in some ways, and that, because young adults do not have the judgment or impulse control of fully mature adults, it is "'difficult to justify applying permanent or long-term sanctions to young offenders,' including young adults in their early 20s."  Objections at 9 (quoting Carrie Mulford, Explanations of Offending at 2, Nat'l Inst. Of Justice, United States Department of Justice (May 2014), and citing Phil Bulman, Justice Research: Young Offenders: What Happens & What Should Happen at 2, Nat'l Inst. Justice, Off. Juv. Just. & Delinquent Prevention, United States Department of Justice (Feb. 2014)).

Nieto argues that prison sentences do not significantly prevent crime, whereas recovery programs have been shown to have a deterrent effect.  See Objections at 10 (citing Kristin Denman, et al., Executive Summary: New Mexico Recovery Academy Evaluation Study at 3, New Mexico Sentencing Commission (2015)(available at https://nmsc.unm.edu/reports/2015/executive-summary-new-mexico-recovery-academy-evaluation-study.pdf)).  He notes that, upon his release, he "will be able to reengage in case management services with the [University of New Mexico] ADOBE Program[1] that will assist in coordinating an education plan and engaging in mental health treatment."  Objections at 11.  He concludes by reiterating the mental health risks to which prison subjects him.  See Objections at 11.

Nieto next argues that his sentence should support his reunification with his family.  See Objections at 11.  He notes that familial relationships are correlated with lower rates of recidivism.

---

[1]The ADOBE program "provides wrap-around services for youths that have been incarcerated in the Bernalillo County Youth Services Center."  ADOBE Program, University of New Mexico Health Sciences Center, https://hsc.unm.edu/research/research-centers/institute-for-resilience-health-and-justice/adobe.html (last accessed Aug. 30, 2020)("ADOBE Site").  It provides medical and mental health support, legal advice, and education support to participants and aims to lower the risk that youth will re-engage in criminal behavior.  See ADOBE Site.

See Objections at 11 (citing Shirley R. Klein, et al., Inmate Family Functioning, 46 Int'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002)).  He states that he would like the Court to hear about his family, and that he will submit letters to the Court from his family and friends.  See Objections.  He concludes by stating that "[a] sentence that reflects rehabilitation will assist Mr. Nieto in achieving his goals to be a productive member of the community and will hopefully enable him to have his own family one day."  Objections at 12.

    **2.**    **The Addendum.**

The USPO responds to Nieto's first objection -- that the calculation for the days of confinement at the time of his sentencing should be 196 days instead of 180 days.  See Addendum to the Presentence Report at 1, filed July 6, 2020 (Doc. 35)("Addendum").  The USPO acknowledges that Nieto was originally arrested on January 29, 2020, for the offense for which the Court is sentencing him, resulting in a case at Bernalillo County Metropolitan Court, number T-4-FR-2020-000503.  See Addendum at 1.  The UPSO notes that the case was dismissed on February 10, 2020, "in deference to federal prosecution," although Nieto "remained in custody pursuant to pending probation violation charges in Second Judicial Juvenile Court case number D-202-JR-2019-0107."  Addendum at 1.  The USPO states that Nieto entered federal custody on a writ on February 14, 2020, and that the USPO's 180 days estimate was calculated using February 14, 2020 as the start date.  See Addendum at 1.  The USPO states that the BOP will calculate the exact number of presentence confinement days that will be credited, and if it alters the current estimate, the USPO will notify the Court before or at the sentencing.  See Addendum at 1.

The USPO next responds to Nieto's second objection -- that the PSR's ¶ 26, at 5-6, incorrectly states that Nieto was sentenced to a term of imprisonment on April 19, 2017, in the State of New Mexico's Second Judicial District, case number D-202-YR-2016-00030.  See

- 8 -

Addendum at 2.   The USPO notes that the Judgment and Disposition ordered Nieto transferred to CYFD's custody with CYFD having "the ability to determine which facility the defendant would serve his indeterminant period of custody not to exceed two years."  Addendum at 2.  When the USPO contacted Juvenile Court, the Juvenile Court clerk's office "indicated that they would consider this sentence to be one of confinement."  Addendum at 2.  Further, the USPO reports, Nieto's juvenile supervision officer states that Nieto served his confinement at the Camino Nuevo Youth Center, "a confinement center administered by CYFD and the Juvenile Justice Services" until January 17, 2019.  Addendum at 2.  Thus, the USPO concludes, "[t]he information in this section and the corresponding application of two criminal history points, pursuant to U.S.S.G. Section 4A1.2(d)(2)(A), will not be changed."  Addendum at 2.

The USPO next responds to Nieto's third Objection -- that the term of imprisonment to which he was sentenced to on August 16, 2019, was again a transfer of his custody to the CYFD and thus not a term of imprisonment, and that the Amended Judgment and Disposition filed October 8, 2019, amends Nieto's sentence and orders him immediately released from custody.  See Addendum at 2.  The USPO agrees that, because of the Amended Judgment and Disposition, "the correct application of one criminal history point, pursuant to U.S.S.G. Section 4A1.2(d)(2)(B) is appropriate."  Addendum at 2.  The USPO states that Nieto's total criminal history score will changed to 5 criminal history points, and, although this score does not change the guideline range, "the correction to paragraph 27 is made by way of addendum."  Addendum at 2.  The USPO notes that a trial in case number D-202-JR-2019-00107 has been set for July 20, 2020, and the UPSO states that, should the trial impact the criminal history calculation, it will notify the Court.  See Addendum at 3.

The USPO next responds to Nieto's fourth objection -- that the criminal history score is incorrectly calculated based on his Objections.  The USPO reiterates that, although the 2 criminal history points in the PSR's ¶ 27, at 6-7, will be amended to 1 criminal history point, it will not alter the criminal history points in the PSR's ¶ 26, at 5-6.  Thus, the USPO concludes, the criminal history score will be 5.  See Addendum at 3.

Finally, the USPO responds to Nieto's fifth objection -- that the arrest information in the PSR's ¶ 54, at 18, should not be included, because the arrest was a result of mistaken identity.  See Addendum at 3.  The USPO responds that it obtained the information in the PSR's ¶ 54, at 18, from police and court records.  See Addendum at 3.  It states that, although it will not alter the information, it will add Nieto's version of the events.  See Addendum at 3.

### 3.      Nieto's Addendum.

Nieto has submitted his Addendum to Sentencing Memorandum, filed August 12, 2020 (Doc. 37)("Nieto's Addendum").  In Nieto's Addendum, he explains that he is attaching three letters from his family members.  See Nieto's Addendum at 1.  Attached to the Addendum are letters from his grandmother, his mother, and his cousin.  See Letters from Family Members at 1-3, filed August 12, 2020 (Doc. 37-1).  His grandmother, who raised him "off and on," speaks to Nieto's close relationship with his grandmother and siblings, and she suggests that he could use his time to study for a GED.  Letters from Family Members at 1.  His mother speaks to his role as a big brother, noting that he "stepped up" when his father went away and noting how he lovingly helps his siblings.  Letters from Family Members at 2.  His cousin asks for a lenient sentence, emphasizing Nieto's "good heart."  Letters from Family Members at 3.

## RELEVANT LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)     to afford adequate deterrence to criminal conduct;
>
> (C)     to protect the public from further crimes of the defendant; and
>
> (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider:

(i) the Guidelines; (ii) the nature of the offense and of the defendant's character; (iii) the available

- 11 -

sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors that § 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted)(quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006)).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).

This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Rita v. United States, 551 U.S. at 351.  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[2]

---

[2]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the resulting Guidelines ranges are advisory.  Gall v. United States, 552 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . ."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.").  The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated, however, to apply a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole.  The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation

---

Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S.

at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

> While the Supreme Court's decision in United States v. Booker has given the
> sentencing court discretion that it did not have earlier, the sentencing court's first
> task remains to accurately and correctly determine the advisory-guideline sentence.
> Thus, before the sentencing court takes up a defendant's Booker arguments, the
> sentencing court must first determine whether the defendant is entitled to downward
> departures.  The sentencing court may, however, also use these same departure
> factors in the Booker calculus, even if the court does not grant a downward
> departure.

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13,

2008)(Browning, J.).  The Supreme Court has recognized, however, that sentencing judges are "in

a superior position to find facts and judge their import under § 3553(a) in each particular case."

Kimbrough v. United States, 552 U.S. at 89.  Applying § 3553(a)'s factors, the Court has

concluded that the case of an illegal immigrant who re-entered the United States to provide for his

two children and two siblings was not materially different from other re-entry cases, and, thus, no

---

marks omitted).  In theory, this freedom could mean that a district court may excise
individual portions of the Guidelines along the way as it performs an otherwise by-
the-book Guidelines analysis, end up with a sentence with built-in variances, and
never even know what sentence a true, rigid Guidelines application would yield.  In
practice, however, appellate courts expect district courts to first obtain the true
Guidelines' sentence range and circumscribe their United States v. Booker-granted
authority to post-Guidelines analysis "variances."  Irizarry v. United States, 553
U.S. 708, 710-16 (2008).  A district court that attempts to vary from
U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably.  See
Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally
reasonable if "the district court committed no significant procedural error, such as
failing to calculate (or improperly calculating) the Guidelines range, treating the
Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a
sentence based on clearly erroneous facts, or failing to adequately explain the
chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24, (D.N.M. June 20,
2014)(Browning, J.)(emphasis in original).

variance from the Guidelines sentence was warranted.  See United States v. Almendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.).  On the other hand, in United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court concluded that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

## LAW REGARDING CALCULATING CRIMINAL HISTORY

Section 4A1.1 of the U.S.S.G states, in relevant part: "The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A."  U.S.S.G. § 4A1.1.  Subsection (a) states: "Add 3 points for each prior sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1(a).  Application Note 1 to U.S.S.G. § 4A1.1 states:

> Certain prior sentences are not counted or are counted only under certain conditions:
>
> > A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted

unless the defendant's incarceration extended into this fifteen-year period.  See § 4A1.2(e).

A sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted under this subsection only if it resulted from an adult conviction.  See § 4A1.2(d).

A sentence for a foreign conviction, a conviction that has been expunged, or an invalid conviction is not counted.   See § 4A1.2(h) and (j) and the Commentary to § 4A1.2.

U.S.S.G. § 4A1.1 n.1.  Subsection (b) to U.S.S.G. § 4A1.1(b) states: "Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a)."  There is no limit to the number of points that may be added under either subsection (a) or subsection (b).  See U.S.S.G. § 4A1.1 n.1 & n.2.

Section 4A1.2(d) treats "offenses committed prior to age eighteen."  U.S.S.G. § 4A1.2(d). It provides that, "[i]f the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence."  U.S.S.G. § 4A1.2(d).  Application Note 7 to U.S.S.G. § 4A1.2 provides that,

for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted.

U.S.S.G. § 4A1.2 n.7.

Section 4A1.2(a)(2) of the U.S.S.G., which announces definitions and instructions for computing criminal history, provides:

If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence.  Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).  If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained

in the same charging instrument; or (B) the sentences were imposed on the same
day.  Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2).  According to § 4A1.2(a)(2)'s plain language, if an intervening arrest separates two sentences, the two sentences are considered separate for the purposes of criminal history calculation, even if the sentences were imposed at the same hearing.  See, e.g., U.S. v. Roybal, No. CR 14-1532 JB, 2014 WL 7474057, at *8 (D.N.M. Dec. 23, 2014)(Browning, J.).  If no intervening arrest separates two prior sentences, in order for the two sentences to be considered a single sentence, one of § 4A1.2(a)(2)'s preconditions must apply, and the sentences must either have emanated from the same charging instrument or been imposed on the same day.  See U.S.S.G. § 4A1.2(a)(2).  "That observation is, accordingly, the end of the debate for purposes of applying § 4A1.2(a)(2)."  United States v. Bhakta, No. CR 16-1090 JB, 2017 WL 4785953, at *8 (D.N.M. Oct. 21, 2017)(Browning, J.).

Section 4A1.1(e) provides:

Add 1 point for each prior sentence resulting from a conviction for a crime of violence that did not receive any points under (a), (b), or (c) above because the sentence was treated as a single sentence, up to a total of 3 points for this subsection.

U.S.S.G. § 4A1.1(e).  Application Note 5 to U.S.S.G. § 4A1.1 provides, in relevant part:

In a case in which the defendant received two or more prior sentences as a result of convictions for crimes of violence that are treated as a single sentence (see § 4A.1.2(a)(2)), one point is added under § 4A1.1(e) for each such sentence that did not result in any additional points under § 4A1.1(a), (b), or (c).  A total of up to 3 points may be added under § 4A1.1(e).

U.S.S.G. § 4A1.1 n.5.

## RELEVANT LAW REGARDING 18 U.S.C. § 3585(b)(2)

18 U.S.C. § 3585(b)(2) provides:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the

sentence commences, as a result of any other charge for which the defendant was
arrested after the commission of the offense for which the sentence was imposed;
that has not been credited against another sentence.

18 U.S.C. § 3585(b)(2).   "[A] sentencing court is without jurisdiction to award credit under

§ 3585(b) for time served in prior custody at sentencing.  Rather, the authority resides with the

Attorney General, as exercised by the federal Bureau of Prisons."  United States v. Brown, 212 F.

App'x 747, 755 (10th Cir. 2007)(citations omitted)(citing United States v. Jenkins, 38 F.3d 1143,

1144 (10th Cir. 1994)).[3]  "The Bureau of Prisons, as opposed to the district courts, is authorized to

compute sentence credit awards after sentencing.  As a result, a federal prisoner dissatisfied with

computation of his sentence must pursue the administrative remedy available through the federal

prison system before seeking judicial review of his sentence."  United States v. Luna-Mora, 180

_____

[3]United States v. Brown is an unpublished opinion, but the Court can rely on an
unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th
Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their
persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have
> generally determined that citation to unpublished opinions is not favored.  However,
> if an unpublished opinion or order and judgment has persuasive value with respect
> to a material issue in a case and would assist the court in its disposition, we allow a
> citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United
States v. Brown has persuasive value with respect to a material issue, and will assist the Court in
its disposition of this Memorandum Opinion and Order.

F. App'x 847, 849 (11th Cir. 2006)(citations omitted)(internal quotation marks omitted); United States v. Fred, No. 05- 801, 2008 WL 2229527, at *2 (D.N.M. Feb. 8, 2008)(Browning, J.).

The Supreme Court held in United States v. Wilson, 503 U.S. 329 (1992), that § 3585(b) does not authorize a district court to compute a sentence credit at sentencing for time served in pretrial detention.  See 503 U.S. at 331-32.  Rather, credit awards must be made by the Attorney General, through the Bureau of Prisons, after sentencing. "In so holding, the [Supreme] Court recognized that under § 3585(b), Congress has indicated that computation of the credit must occur after the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing." United States v. Jenkins, 38 F.3d at 1144 (alterations omitted)(citations omitted)(internal quotation marks omitted).

## ANALYSIS

The Court first calculates the presentence time served as 215 days, although the BOP, not the Court, must award this credit.  The Court next overrules Nieto's Objection to the PSR's ¶ 26, at 5-6.  Last, the Court sustains Defendant Adrian Nieto's Objection to the PSR's ¶ 27, at 6-7, and to the criminal history calculation.  The Court will determine whether the information about the state court case should be included in the PSR's ¶ 54, at 18, at the sentencing hearing.

## I. ALTHOUGH THE COURT CANNOT AWARD TIME SERVED CREDIT, IT CALCULATES NIETO'S TIME SERVED AS 215 DAYS.

The Court first concludes that it will not make the calculation for time served credit and instead will rely on the BOP's calculation.  18 U.S.C. § 3585(b)(2) provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences, as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585(b)(2).  The Court has concluded that, for 18 U.S.C. § 3585(b)(2)'s purposes, "the Court has no authority to tell the BOP how to calculate the time served credit."  United States v. Padilla, 2011 WL 6831673, at \*7 (citing United States v. Brown, 212 F. App'x at 755; United States v. Luna-Mora, 180 F. App'x at 849)).  Thus, the Court makes an estimate so that Court has some idea what a time-served sentence would look like.  Because Nieto's time in state custody was related to the same underlying offense, the Court would include that time in its calculation.  See al-Marri v. Davis, 714 F.3d 1183, 1187 (10th Cir. 2013)(citing 18 U.S.C. § 3585(b)).  Thus, excluding the date of sentencing, Nieto would have 215 days of presentence credit.  Ultimately, the Court will defer to the BOP to calculate Nieto's time served credit.  If Nieto does not agree with the BOP's calculation, he has an appeal process.  About all the Court can do now is make certain that the information in the PSR is as accurate as possible, and the Court will strive to make sure the information is as accurate and correct as possible.

## II.   NIETO'S JUVENILE CONFINEMENT IN THE PSR'S ¶ 26, at 5-6, COUNTS AS CONFINEMENT.

The Court further concludes that Nieto's juvenile confinement counts as an imprisonment for the purpose of calculating Nieto's criminal history score.  The Sentencing Guidelines provide that, for offenses that a defendant committed before the age of eighteen in which the defendant was not convicted as an adult, or was convicted as an adult and did not a sentence of imprisonment that exceeded one year and one month, the sentencing court should

(A)   Add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense.

(B)   Add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

U.S.S.G. § 4A1.2 (A), (B).  Nieto objects to 2 points being added under U.S.S.G. §4A1.2 (A) for case no. D-202-YR-2016-00030, in which the Second Judicial District transferred legal custody of Nieto to CYFD, who then placed Nieto in Camino Nuevo Youth Center, "a confinement center administered by CYFD and the Juvenile Justice Services."  Addendum at 2.  See Objections at 2.  The question is whether this placement into CYFD's custody and then the Camino Nuevo Youth Center qualifies as "a sentence of confinement" under U.S.S.G. § 4A1.2 (A).

In United States v. Birch, 39 F.3d 1089 (10th Cir. 1994), the Tenth Circuit concluded that a defendant's placement into the Kansas state secretary of social and rehabilitation services' custody as a juvenile was a "confinement" within the meaning of U.S.S.G. § 4A1.2(d)(2)(A).  39 F.3d at 1095.  In that case, the Tenth Circuit noted that, although it previously had not addressed the issue, the United States Courts of Appeals for the Sixth and Eleventh Circuits[4] concluded that "commitment to the custody of the state's juvenile authority constitutes 'confinement' within the meaning of U.S.S.G. § 4A1.2(d)(2)(A)."  United States v. Birch, 39 F.3d at 1095 (quoting U.S.S.G. § 4A1.2(d)(2)(A), and citing United States v. Fuentes, 991 F.2d 700, 702 (11th Cir. 1993); United States v. Kirby, 893 F.2d 867, 868 (6th Cir. 1990), cert. denied, 498 U.S. 945 (1990)).  The Tenth Circuit noted that, as in United States v. Birch, the Sixth and Eleventh Circuit cases involved a defendant whose criminal history "included a juvenile adjudication at which the defendant was committed to the custody of the appropriate state agency," which "placed each defendant in a confinement facility."  39 F.3d at 1095.  Noting that the United States v. Birch defendant was

---

[4]Other United States Courts of Appeals besides the Sixth, Tenth, and Eleventh Circuits have concluded that a defendant's commitment to a juvenile facility constitutes confinement under U.S.S.G. § 4A1.2(d)(2)(A).  See Roger W. Haines, Jr., et al., Federal Sentencing Guidelines Handbook at 1411 n.219 (3d. ed. 2019)(citing, e.g., United States v. Steward, 643 F.3d 259 (8th Cir. 2011); United States v. Adams, 988 F.2d 493 (4th Cir. 1993)).

unable to leave the Youth Center where he was placed, the Tenth Circuit concluded that his placement was a "confinement" under U.S.S.G. § 4A1.2(d)(2)(A).  39 F.3d at 1095.  In another case, United States v. Wilson, 41 F.3d 1403 (10th Cir. 1994), the Tenth Circuit confirmed that a defendant's placement in the Oklahoma Department of Human Services' custody for three-and-one-half years, which he primarily spent at a security facility, was "properly considered a 'confinement' under U.S.S.G. § 4A1.2(d)(2)(A)."  41 F.3d at 1404.[5]

Similar to the defendants in United States v. Birch and United States v. Wilson, Nieto was committed to the custody of the state's juvenile authority, in this case the CYFD.  Objections at 3 (citing Judgment and Disposition at 1, filed June 30, 2020)(Doc. 33-1)).  Further, as in United States v. Birch and United States v. Wilson, Nieto spent his time in custody at a confinement facility, with no indication that he would have been able to leave if he wanted to do so.  Thus, as the Tenth Circuit concluded in United States v. Birch and United States v. Wilson, Nieto's transfer of custody to the state juvenile official and subsequent placement in a security facility is a confinement under U.S.S.G. § 4A1.2(d)(2)(A).

---

[5]Relatedly, the Tenth Circuit spoke to what a "sentence of imprisonment" means in the guidelines in United States v. Vanderlaan, 921 F.2d 257 (10th Cir. 1990).  In that case, the Tenth Circuit noted that U.S.S.G § 4A1.2(B) "defines a sentence of imprisonment as a 'sentence of incarceration.'"  United States v. Vanderlaan, 921 F.2d at 259 (quoting U.S.S.G. § 4A1.2(B)).  The Tenth Circuit concluded that this definition "suggests that physical confinement is a key distinction between the sentences of imprisonment and other types of sentences," and noted that the Sentencing Guidelines "make no distinction between offenders incarcerated primarily for rehabilitation and those incarcerated simply to remove the offender from society."  921 F.2d at 259 (noting that Webster's Third International Dictionary states that incarceration is "a confining or state of being confined").  See Federal Sentencing Guidelines Handbook at 1411 (citing this case as analogous support for the proposition that "[c]ommitment to a juvenile facility constitutes a 'confinement' under paragraph (d)(2)(A)").

In terms of the PSR's ¶ 27, at 6-7, the USPO and Nieto agree that the amended Judgement and Disposition entered in that case render the sentence to merit only one criminal history points. <u>See</u> Addendum at 3.  The Court agrees and thus adjusts Nieto's criminal history for the PSR's ¶ 27, at 6-7, to 1 point.  Thus, the Court uses 1 point in its overall calculation.

**IT IS ORDERED** that: (i) the Objections in Defendant Adrian Nieto's Objections to Presentence Report and Sentencing Memorandum, filed June 30, 2020 (Doc. 33),  are sustained in part, and overruled in part; (ii) the Court calculates the presentence time served as 215 days, although the BOP, not the Court, must award this credit; (iii) the Court overrules Nieto's Objection to the PSR's ¶ 26, at 5-6; (iv) the Court sustains Defendant Adrian Nieto's Objection to the PSR's ¶ 27, at 6-7, and to the criminal history calculation; (v) the Court will determine whether the information about the state court case should be included in the PSR's ¶ 54, at 18, at the sentencing hearing.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
    United States Attorney
Jon K. Stanford
    Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Daniel Benjamin Snyder
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

*Attorney for the Defendant*